CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
March 10, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| TERRENCE R. DAVIS,            ) | |
|     Plaintiff,        ) | Case No. 7:24-cv-00653 |
|                       ) | |
| v.                            ) | |
|                       ) | By: Michael F. Urbanski |
| WARDEN TIKKI N. HICKS, et al., ) | Senior United States District Judge |
|     Defendants.      ) | |

## MEMORANDUM OPINION

Terrence R. Davis, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Warden Tikki Hicks, Officer M. Hagy, and Chadwick Dotson. The case is presently before the court on the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 18. For the reasons set forth below, the motion is **GRANTED** with respect to the federal constitutional claims asserted under § 1983, and the court declines to exercise supplemental jurisdiction over any claim asserted under state law.

### I.      Background

Davis is currently incarcerated at River North Correctional Center. The events giving rise to this action occurred at Pocahontas State Correctional Center (PSCC). At the time of the events in question, Hicks was the Warden of PSCC, Hagy was an Inmate Hearings Officer (IHO), and Dotson was the Director of the Virginia Department of Corrections (VDOC). See Compl., ECF No. 1 at 1; Mem. Supp. Compl., ECF No. 1-1 at 1.

On July 27, 2022, Davis was removed from general population at PSCC and placed in the Restorative Housing Unit (RHU) pending an investigation. Several days later, on August 4, 2022, Davis received four disciplinary charges for breaching or attempting to breach the security perimeter with contraband (VDOC Offense Code 138). ECF No. 1-1 at 4.

After being notified of the disciplinary charges, Davis elected to accept the penalty offered for one of the charges. Id. The three remaining charges, which are the subject of this action, "were to be adjudicated by the IHO." Id.

On the morning of August 10, 2022, Davis was called to appear for a disciplinary hearing by defendant Hagy. At the time of the hearing, Davis had been engaging in a hunger strike for five days, which resulted in fatigue and reduced strength. He only prepared for the hearing for approximately five minutes. Id.

A correctional officer identified as Lt. Schrader escorted Davis to an office in the RHU for the hearing. After Davis arrived, Hagy informed Davis that he was only going to hear one of the three remaining disciplinary charges because Davis took too long to come out of his cell. When Davis disputed that assertion, Hagy responded that he could "do what he wanted to do." Id. at 5.

Hagy proceeded to conduct one disciplinary hearing. He found Davis guilty of Offense Code 138 and penalized him with the loss of 180 days of earned good-time credits. Id.

Later that same day, Davis was called to the intake area to meet with defendant Hicks to discuss his five-day hunger strike. During the meeting, Davis informed Hicks that Hagy had violated his right to due process by only conducting one disciplinary hearing. Hicks advised Davis to appeal Hagy's decision and indicated that the issue could be rectified on appeal. Id.

On August 12, 2022, Davis received an appeal package for "all three violations of Offense Code 138." Id. The package included a "Refusal to Appear" form for each charge, which falsely reported that Davis had failed to appear for his disciplinary hearings. Id. The forms were signed by Hagy and Shrader.

2

On August 13, 2022, Davis asked Shrader why he had signed the forms. Shrader informed Davis "that he had to as a formality" but, if questioned by anyone, he would "tell the truth" and confirm that Davis did attend one hearing and wished to attend the other two hearings that Hagy refused to conduct. Id. at 6–7.

On August 22, 2022, Hicks received Davis's Level I appeal challenging the disposition of the three disciplinary charges for which Davis was accused of failing to appear. On September 16, 2022, Davis received Hicks's response to his appeal. Davis alleges that because of Hagy's "unlawfully falsified state documents" indicating that he refused to appear for his hearings, Hicks "deemed [his] refusal as an admission of guilt" and therefore upheld Hagy's decision. Id. at 7.

On November 9, 2022, VDOC Regional Administrator Carl Manis "overturned the Level I decision and dismissed all three (3) disciplinary offenses." Id. During at least part of the intervening period, Davis remained in the RHU. See id. at 10 (alleging that "the negligent supervision of defendant Hicks caused the plaintiff to remain in RHU for an illegal extended period of time").

Based on the foregoing allegations, Davis filed this action under 42 U.S.C. § 1983 against Hagy, Hicks, and Dotson in their individual and official capacities. See id. at 4. Davis asserts violations of his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Eighth Amendment, and the First Amendment. He also asserts claims under state law. He seeks monetary damages and unspecified "declaratory and injunctive relief." Id. at 11.

## II.  Standard of Review

In response to the complaint, the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Pro se litigants still must allege sufficient facts to state a plausible claim for relief. Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016).

## III.  Discussion

### A.  Constitutional Claims under § 1983

Section 1983 imposes liability on any person who, under color of state, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Claims Against Defendants in Their Official Capacities

As noted above, Davis filed suit against the defendants in their individual and official capacities. A suit against a state official in his official capacity is "no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that the Eleventh Amendment "bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983." Lawson v. Gault, 828 F.3d 239, 278 (4th Cir. 2016) (citing Will, 491 U.S. at 71). Additionally, whereas § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020).

In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective equitable relief against state officials to prevent ongoing violations of federal law. Biggs v. N.C. Dep't of Pub. Safety, 953 F.3d 236, 242 (4th Cir. 2020). To fall within this exception, a plaintiff must allege "an ongoing violation of federal law" and seek relief that is "properly characterized as prospective." Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation marks omitted). Because Davis's complaint does not satisfy either of these requirements, his claims under § 1983 against the defendants in their official capacities must be dismissed.

### 2. Claims Against Defendants in Their Individual Capacities

In order to state a claim against a defendant in their individual or personal capacity under § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir.

5

2018) (internal quotation marks and alterations omitted). "Liability is thus determined person by person: A plaintiff must show 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (quoting Iqbal, 556 U.S. at 676).

### a. Claims Against Defendant Dotson

Davis does not allege that Dotson was personally involved in any of the events giving rise to this action. Instead, Davis appears to premise any claim against Dotson solely on his position as the Director of the VDOC during the applicable time period. See ECF No. 1-1 at 3 (alleging that Dotson was "legally responsible for the overall operation of the Department of Corrections, and each institution under its jurisdiction, including where the civil right[s] violations occurred").

It is well established that the doctrine of respondeat superior or vicarious liability is "inapplicable" to § 1983 actions. Iqbal, 556 U.S. at 676. Government officials "may be liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., 31 F.4th 238, 257 (4th Cir. 2022). To establish supervisory liability under § 1983, a plaintiff must show: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Id. (quoting Shaw v. Stroud,

13 F.3d 791, 799 (4th Cir. 1994)); see also Johnson v. Robinette, 105 F.4th 99, 123 (4th Cir. 2024).

Davis has not alleged facts to support these elements. The mere assertion that Dotson was responsible for the operation of the VDOC and the facilities in its jurisdiction is insufficient to support a claim of supervisory liability under § 1983. See, e.g., Wilkins v. Montgomery, 751 F.3d 214, 227 (4th Cir. 2014) ("Appellant argues that Appellee had an overarching duty to keep the patients at CSH safe. While this may be true, it does not relieve Appellant of the burden of showing a pervasive risk of harm that Appellee knew about, actually or constructively—a burden that Appellant has not met."). Thus, the complaint fails to state a § 1983 claim against Dotson in his individual capacity.

      b.    **Due Process Claims**

Davis asserts claims for denial of due process against Hagy and Hicks. He alleges that Hagy deprived him of due process in connection with the disciplinary proceedings by falsely reporting that he refused to appear and that Hicks "failed to investigate [his] concerns regarding the 'refusal to appear' document." ECF No. 1-1 at 8–9. Davis further asserts that he had to remain in the RHU "for a longer period" as a result of the defendants' actions or omissions. Id.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To establish that a government actor violated this proscription, 'a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.'" Cartagena v. Lovell, 103 F.4th 171, 182 (4th Cir. 2024) (quoting Prieto v.

7

Clarke, 780 F.3d 245, 248 (4th Cir. 2015)). For the following reasons, the court concludes that Davis's current allegations fail to state a claim for denial of due process.

First, to the extent Davis claims that he was deprived of due process in connection with the prison disciplinary proceedings, the Supreme Court has recognized that "constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interest—such as the loss of good time credits" imposed as a penalty by defendant Hagy. Lennear v. Wilson, 37 F.3d 257, 268 (4th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). However, Davis alleges that he filed a successful administrative appeal to the regional administrator and that the regional administrator "overturned" Hagy's decision. ECF No. 1-1 at 9. Because "any procedural error was corrected through the administrative appeals process," Davis cannot plausibly allege that he was convicted and penalized with the loss of good-time credits without due process of law. Frank v. Schultz, 808 F.3d 762, 764 (9th Cir. 2015); see also Wycoff v. Nichols, 94 F.3d 1187, 1189 (8th Cir. 1996) ("[The administrative] reversal of the case against Wycoff constituted part of the due process Wycoff received, and it cured the alleged due process violation based on the [prison] disciplinary committee's initial decision to sanction Wycoff."); Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995) ("There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process. The administrative appeal process is part of the due process afforded prisoners.") (internal citation omitted); Terrell v. Bassett, 353 F. Supp. 2d 658, 661 (E.D. Va. 2005), aff'd, 132 F. App'x 452 (4th Cir. 2005) ("A number of federal courts have held that the effect of a successful administrative appeal is to cure any procedural defect that may have occurred at the disciplinary hearing.") (internal quotation marks and brackets omitted).

Second, to the extent Davis claims that his right to due process was violated as a result of having to remain in the RHU following Hagy's initial decision, segregated "[c]onfinement while awaiting administrative review which leads to the reversal of the inmate's conviction does not, itself, violate due process," Terrell, 353 F. Supp. 2d at 661, and Davis's complaint otherwise fails to allege facts from which the court could reasonably infer that his continued confinement in the RHU implicated a protected liberty interest. Because "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," any liberty interest must "arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). To establish a liberty interest derived from state law, an inmate in Virginia must "point to a Virginia law or policy providing him with an expectation of avoiding the conditions of confinement and demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life." Prieto, 780 F.3d at 252. In deciding whether confinement in administrative segregation is "harsh and atypical," courts consider: "(1) the magnitude of confinement restriction[s]; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." Cartagena, 103 F.4th at 183 (internal quotation marks omitted). Davis's complaint, as currently drafted, does not describe his conditions of confinement in the RHU, specify how long he was confined there, or identify any collateral consequences resulting from his placement in the RHU. Consequently, the court cannot reasonably infer that he was deprived of a protected liberty interest as required to state a claim for denial of due process. See id. ("At bottom, we conclude that Cartagena failed adequately to allege a cognizable liberty interest in his placement in the SDT Program. And because he failed to plead a liberty interest, the Due Process Clause

9

requires no process related to his placement in the Program."); see also Kimble v. Swink, No. 22-6437, 2024 WL 688105, at *1 (4th Cir. Feb. 20, 2024) (affirming the dismissal of a similar claim where an inmate failed to sufficiently allege that the conditions in a restrictive housing unit amounted to atypical and significant hardship).

Third and finally, to the extent Davis alleges that Hicks deprived him of due process by failing to investigate his allegations against Hagy, such claim is also subject to dismissal under Rule 12(b)(6). See Mitchell v. McNeil, 487 F.3d 374, 378–79 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) ("Geiger does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

### c.   Equal Protection Claim

Davis next asserts that Hagy violated the Equal Protection Clause of the Fourteenth Amendment by "fraudulently execut[ing] a state document during a disciplinary hearing." ECF No. 1-1 at 8. This claim is also subject to dismissal. To establish a violation of the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011). Davis's bare and conclusory reference to the Equal Protection Clause, without more, is insufficient to state a plausible claim for relief. See Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause

10

of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alterations omitted).

### d. Eighth Amendment Claim

Davis next asserts that "[t]he fraudulent execution of the 'refusal to appear' [form] enabled the prison administration to [violate his] Eighth Amendment right to be free from cruel and unusual punishment." ECF No. 1-1 at 8. "The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" Thompson v. Commonwealth, 878 F.3d 89, 97 (4th Cir. 2017) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The United States Court of Appeals for the Fourth Circuit recognizes two general categories of Eighth Amendment claims in the prison setting: those involving "conditions of confinement" and those involving "excessive force." Thorpe v. Clarke, 37 F.4th 926, 941 n.5 (4th Cir. 2022) (internal quotation marks omitted). Because Davis does not allege that Hagy, Hicks, or any other PSCC officer applied physical force against him, the court construes the complaint to allege that his conditions of confinement in the RHU violated the Eighth Amendment.[1]

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019) (internal quotation marks omitted). "Only extreme deprivations are adequate to satisfy the objective component." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). "In order to

---

[1] To the extent Davis intended to assert a claim of excessive force, the complaint is devoid of facts that would support such claim against the named defendants. In his response to the motion to dismiss, Davis refers to an incident involving a canine that occurred at Wallens Ridge State Prison. ECF No. 21 at 2. However, he does not plausibly allege that the named defendants were personally involved in the use of force at a different correctional facility.

demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. (internal quotation marks and citations omitted). And to satisfy the subjective component, a prisoner must show that a correctional official "knew of and disregarded an excessive risk to inmate health or safety." Danser v. Stansberry, 772 F.3d 340, 347 (4th Cir. 2014) (internal quotation marks and brackets omitted). In other words, "the prisoner must show that the official consciously disregarded a substantial risk of serious harm." Cartagena, 103 F.4th at 181 (internal quotation marks and brackets omitted). This is a "very high standard," which is not met by a showing of mere negligence. Ford v. Hooks, 108 F.4th 224, 229 (4th Cir. 2024).

Davis's complaint does not plausibly plead these elements. Although he alleges that he was confined in the RHU for a "longer period" as a result of the initial disciplinary proceedings, ECF No. 1-1 at 8, he does not describe his conditions of confinement in the RHU or specify how long he was housed there. Nor does he allege that he suffered any serious or significant injury as a result of his conditions of confinement or that he was exposed to a substantial risk of serious harm. Likewise, there are no allegations from which the court could reasonably infer that Hagy or Hicks actually knew of and disregarded an excessive risk to Davis's health or safety. Consequently, the complaint fails to state a cognizable claim under the Eighth Amendment.

    e.  **First Amendment Claim**

Davis's final claim under § 1983 is that he was "subjected to retaliation from the defendant(s)" for engaging in the five-day hunger strike. ECF No. 1-1. This claim, as currently pled, is also subject to dismissal.

The First Amendment protects not only the "right to free speech . . . , but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2020). "A First Amendment retaliation claim requires a plaintiff to show that (1) his 'speech was protected,' (2) 'the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech,' and (3) 'a causal relationship exists between [the plaintiff's] speech and the defendant's retaliatory action.'" Hodges v. Meletis, 109 F.4th 252, 262 (4th Cir. 2024) (quoting Suarez Corp. Indus., 202 F.3d at 686).

Davis has not alleged facts sufficient to satisfy these elements. With respect to the first element, some courts have recognized that "a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message." Stefanoff v. Hays Cnty., 154 F.3d 523, 527 (5th Cir. 1998) (emphasis added) (citing Texas v. Johnson, 491 U.S. 397, 404 (1989) ("In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it."); but see Thomas v. May, No. 1:21-cv-00708, 2024 WL 522576, at *3 & n.4 (D. Del. Feb. 9, 2024) (concluding that it was not clearly established that a prisoner's participation in a hunger strike is protected by the First Amendment) (collecting cases). Davis's complaint, however, does not identify any particularized message that he intended to convey by engaging in a hunger strike or plausibly

13

allege that any intended message was likely to have been understood by those who saw him refusing to eat.

Additionally, to the extent the claim of retaliation is asserted against Hagy, Davis does not allege that Hagy was even aware of the hunger strike at the of the challenged disciplinary actions. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005) ("In order to establish [the requisite] causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity. Knowledge alone, however, [does not suffice].") (internal quotation marks omitted). And insofar as the claim of retaliation is asserted against Hicks, Davis does not specifically identify what action he believes Hicks took in retaliation for engaging in a hunger strike.[2] As a result, the current complaint fails to state a plausible claim of retaliation against Hagy or Hicks.

**B.     Claims under State Law**

Because the federal claims asserted in the complaint are subject to dismissal for failure to state a claim, the court declines to exercise supplemental jurisdiction over any claim asserted under state law and will dismiss such claims without prejudice. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

---

[2] To the extent Davis relies on Hicks's decision to deny his Level I appeal of the disciplinary convictions, courts have held that the denial of a grievance or an administrative appeal is "not an 'adverse action' for retaliation purposes." Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015); see also Mitchell v. Thompson, 564 F. App'x 452, 457 (11th Cir. 2014) ("Mitchell also alleges Cross retaliated against him, when she denied his grievances. This allegation fails to state a claim for relief, because it does not show Mitchell suffered an adverse action that likely would deter a person of ordinary firmness from engaging in such speech.").

14

## IV.     Conclusion

For the reasons stated, the defendants' motion to dismiss, ECF No. 18, is **GRANTED** with respect to the federal constitutional claims asserted under 42 U.S.C. § 1983. Those claims are dismissed without prejudice for failure to state a claim, and any remaining claims under state law are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Because Davis is proceeding pro se, the court will afford him the opportunity to file an amended complaint within 30 days if he believes that he can remedy any of the pleading deficiencies identified above. An appropriate order will be entered.

Entered: March 10, 2026

Michael F. Urbanski
U.S. District Judge
2026.03.10
11:48:14 -04'00'

Michael F. Urbanski
Senior United States District Judge